# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

LINDA MATHEWS, §
§
     *Plaintiff,* §
§
*versus* § CIVIL ACTION NO. 5:12-1486
§
CAROLYN W. COLVIN, §
Acting Commissioner of §
Social Security, §
§
     *Defendant.* §

## REPORT AND RECOMMENDATION

Linda Mathews ("Mathews") seeks review of an adverse decision on her applications for disability-based benefits under the Social Security Act.

## I.  Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence.  *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision.  *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).  Neither can they overturn administrative rulings because they would have reached a different conclusion had the matter come before them in the first instance.  *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012).

When reviewing acts of administrative agencies, courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights"). Thus, judicial review is quite deferential to the Commissioner's presumed expertise.

## II.  Background

In October 2004, Mathews applied for disability-based social security benefits due to upset stomach, fatigue, weight loss and right arm and shoulder pain.  (T. 209).[1]  On September 24, 2010, Administrative law judge, Robert E. Gale ("ALJ Gale"), denied Mathew's  applications.[2]  (T. 32-39).  The Appeals Council declined review; Mathews then instituted this proceeding.

## III.  Commissioner's Decision

Utilizing a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act,[3] ALJ Gale found that Mathews has several impairments (listed in note) that are "severe" within the

---

[1]    "T." followed by a number refers to the page of the administrative record.  (Dkt. No. 12).

[2]    Mathews's applications originally were assigned to and decided by a different administrative law judge, J. Michael Brounoff, on March 28, 2008. (T. 32-39).  The Appeals Council vacated ALJ Brounoff's decision and reassigned the matter to ALJ Gale for further proceedings.  (T. 104-108).

[3]    The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

Commissioners' concept of that term (*i.e.*, medically determinable abnormalities producing more than minimal functional limitations).[4] He next found that, despite her impairments, Mathews retains physical and mental abilities to perform semi-skilled work at a sedentary exertional level.[5] (T. 19, 25). Then, relying on testimony from an expert vocational witness, ALJ Gale found that Mathews retains abilities necessary to perform her past relevant work as a dispatcher as that job actually and generally is performed. (T. 25).

When sequential evaluation results in a Step 4 determination that a claimant can still perform past relevant work, further inquiry normally ends,

---

[4]     *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Meadors v. Astrue*, 370 Fed. App'x 179, 182 (2d Cir. 2010).  Impairments that separately and collectively were found to be severe are (1) adjustment disorder with depressed mood, (2) fibromyalgia, (3) polymyalgia rheumatic, and (4) status-post right shoulder surgery. (T. 16).

[5]     ALJ Gale's complete "residual functional capacity" finding was:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently, sit six hours in an eight-hour day, and stand and/or walk sit hours in an eight-hour day.  The claimant is not significantly limited in her ability to remember locations and work-like procedures, understand and remember very short and simple instructions, carry out  detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, and set realistic goals or make plans independently of others; but is moderately limited in her ability to sustain an ordinary routine without special supervision, work in coordination or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(T. 19).

and an application for disability-based benefits is denied.[6] In this instance, however, ALJ Gale continued on beyond Step 4. Relying again on expert vocational testimony, ALJ Gale found at Step 5 that Mathews can perform alternative, available work as an "addresser" and "order clerk, food and beverage." (T. 26).

Under both the Step 4 and Step 5 findings, a conclusion of "not disabled" was appropriate. (T. 26).

## IV. Points of Alleged Error

Mathews proffers four alleged errors:

1. The ALJ erred in determining the residual functional capacity by failing to properly evaluate the opinions of treating physicians Dr. Neupane and Dr. Mosher;

2. The ALJ erred in finding that Plaintiff is not a credible witness;

3. The ALJ erred in determining that Plaintiff was capable of performing past relevant work as a dispatcher; and,

4. The [ALJ] erred in determining that Plaintiff was capable of performing jobs which exist in significant numbers in the national economy.

(Dkt. No. 14, pp. 1, 12-22).

In response to each point, the Commissioner argues that ALJ Gale employed correct legal principles and that his factual findings are supported by substantial evidence.[7] (Dkt. No. 15, pp. 16-25).

---

[6]       20 C.F.R. §§ 404.1520(a)(4) (iv), 416.920(a)(4)(iv); *see also Cichocki v. Astrue*, 534 Fed. App'x 71, 74 (2d Cir. 2013) (summary order).

[7]       Under this district's practice, the parties marshal their arguments through competing briefs. *See* General Order #18,September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 4).

# V. Discussion and Analysis

The principal thrust of Mathews's attack on the Commissioner's decision is that a core predicate finding of residual functional capacity is infirm because ALJ Gale erred when assessing credibility of medical opinions and Mathews's subjective testimony. Accordingly, neither ALJ Gale's Step 4 finding (ability to perform past relevant work) nor his Step 5 finding (ability to perform alternative work) can stand.

Nothing in social security jurisprudence is more firmly established than that it is the prerogative of the Commissioner, not reviewing courts, to resolve evidentiary conflicts and to appraise credibility of witnesses, including the claimant. *Aponte v. Secretary, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Consequently, reviewing courts are loathe to second-guess and overturn credibility choices made by an administrative adjudicator. *See Pietrunti v. Director, Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Normally, [the court] give[s] an ALJ's credibility determinations special deference because the ALJ is in the best position to see and hear the witness."). Reviewing courts, however, cannot abdicate their statutory duty to determine whether correct principles of law were applied and whether challenged decisions are supported by substantial evidence. Even credibility choices are examined in that limited context.

## A. *Weighting of Medical Opinion Evidence Of Physical Capacity*

Dr. Hom Neupane, M.D., a rheumatologist, began treating Mathews for complaints of diffuse aches and pains as well as osteoporosis in December 2006. (T. 563, 619-27). He continued seeing Mathews until at least February, 2009.

In January 2008, Dr. Neupane completed an Onondaga County Department of Social Services medical questionnaire regarding Mathews's functional limitations.  He opined – by checking boxes – that she is "moderately limited – able to perform from 2 to 4 hours/day" the following activities:  walking; standing; sitting; pushing, pulling, bending; seeing, hearing, speaking; using hands; ability to lift or carry; and stairs or other climbing.[8]  (T. 742).

Had ALJ Gale given these opinions controlling or great weight, he likely would not have found Mathews capable of performing semi-skilled, sedentary work.[9]  He chose, however, to give Dr. Neupane's forensic opinions only "some weight," stating that limitations suggested by Dr. Neupane were inconsistent with his own negative clinical findings, with Mathews's activities of daily living, and with her acknowledged improvement with medication.  (T. 22).

ALJ Gale elected, instead, to give "considerable weight" to opinions expressed by Dr. John F. Mosher, M.D., a professor in the Department of Orthopedic Surgery at Upstate Medical University, who performed right rotator cuff repair surgery in December, 2005.  Dr. Mosher completed an "employability questionnaire" wherein he opined that Mathews's right rotator cuff tear was an impairment that would not last more than one year.  He assessed that, following surgery, Mathews could work 30 hours per week in the spring of 2006, and

---

[8]     Dr. Neupane's answers are puzzling with respect to hearing, speaking and using hands, because Mathews does not allege any impairments regarding these activities, and there is no medical evidence thereof.

[9]     Residual functional capacity contemplates ability to work on a regular and continuing basis. *See* 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c); *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).  "A 'regular and continuous basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *1-2 (SSA July 2, 1996).  To perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday.  *See* SSR 96-9p, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK—IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN SEDENTARY WORK, 1996 WL 374185, at *6-7 (SSA July 2, 1996).

should be able to return to full-time employment six weeks thereafter. (T. 436, 448). On May 17, 2006, Dr. Mosher opined that, in regards to her right shoulder, Mathews could perform light work. (T. 450).

ALJ Gale also received medical opinion evidence from three other "acceptable" medical sources:[10] (1) Dr. Berton Shayevitz, M.D., a consulting physician who examined Mathews in December, 2004 (T. 398-400); (2) Dr. Erik S. Daly, M.D., an internal medicine physician who provided primary care (T. 474-76, 703); and (3) Dr. Thomas V. Smallman, M.D., an orthopedic surgeon who examined Mathews in November 2006 for musculoskeletal pains (T. 559). (T. 20-21). Each source expressed opinions regarding Mathews's physical limitations; none was inconsistent with demands of sedentary work.[11]

---

[10] "Acceptable" medical sources are licensed physicians (medical or osteopathic doctors), psychologists, optometrists, podiatrists, and speech-language pathologists. 20 C.F.R. §§ 404.1513(a), 416.913(a). An "[a]cceptable medical source . . . provides evidence about . . . impairments . . . and includes treating sources, nontreating sources, and nonexamining sources." 20 C.F.R. §§ 404.1502, 416.902.

[11] Dr. Shayevitz:

Observed a normal gait and stance, walked on heels and toes without difficulty, used no assistive device, needed no help changing for examination or getting on and off the exam table. (T. 399). Mathews had full range of motion in her cervical and lumbar spine, and demonstrated full muscle strength and a full range of motion as well as normal reflexes and sensations throughout her arms and legs, but for bilateral shoulder forward elevation limited to 160 degrees. (T. 399-400). Dr. Shayevitz assessed transient limitations due to aches and pains in the left arm, left shoulder, and left side as well as occasionally mildly-to-moderately limited by fluctuating nausea. (T. 400). Her prognosis was good. (*Id.*).

Dr. Daly:

As of June and July 2006, he observed that Mathews exhibited a normal gait and station. (T. 474, 476). She was able to heel and toe walk with no difficulty. She exhibited normal bulk, tone, and strength in her legs as well as the full range of motion in her hips and knees. (*Id.*). Dr. Daly reported that Mathews appeared to be doing relatively well and that her symptoms were mild and intermittent. (T. 475-76). Dr. Daly opined that Mathews had no progressive or limiting health issue. (T. 474). In October 2009, Dr. Daly reported that Mathews's motor/sensory exam was normal and she demonstrated normal gait. (T. 703).

(continued...)

ALJ Gale gave Dr. Shayevitz's opinion only "limited weight" because Dr. Shayevitz examined Mathews on one brief occasion and reported mostly negative findings based on Mathews's subjective reports. (T. 20). ALJ Gale did not quantify what weight he afforded to Dr. Daly's and Dr. Smallman's opinions.

### 1.   Challenge to Medical Opinion Credibility Choices

Mathews mounts a two-pronged challenge. First, she argues that ALJ Gale erred by failing to afford controlling weight to Dr. Neupane's opinion regarding her limitations, and, alternatively in not weighting Dr. Neupane's opinion in accordance with an evaluative protocol established in the Commissioner's regulation. Second, she argues that ALJ Gale erred in affording considerable weight to Dr. Mosher's opinion.

Matthews suggests that Dr. Mosher's opinion regarding fitness for light work infringes on a matter reserved exclusively for the Commissioner, and, in any event, is specifically limited to only right shoulder impairment. Further, Mathews asserts that Dr. Mosher's opinion is "outdated" because it was given four years before ALJ Gale reached his decision. (Dkt. No. 14, pp. 16-17).

### 2.   Governing Legal Principles

Administrative law judges must give controlling weight to opinions of "treating sources"[12] regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory

---

[11](...continued)
Dr. Smallman:

Upon examination in November 2006, there was no evidence of musculoskeletal disease, despite Mathews's complaints of occasional pain and spasm. (T. 559). X-rays of Mathews's right hip and femur were completely normal. (T. 560).

[12]     *See* 20 C.F.R. §§ 404.1502, 416.902 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.").

diagnostic techniques and are not inconsistent with the other substantial evidence in the case record.[13]    But, when treating source opinion swims upstream, contradicting other substantial evidence, such as opinions of other medical experts, it may not be entitled to controlling weight. *See Williams v. Commissioner of Soc. Sec.*, 236 Fed. App'x 641, 643–44 (2d Cir. 2007); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).    Likewise, a treating physician's opinion may be discounted when it is internally inconsistent. *See Micheli v. Astrue*, 501 Fed. App'x 26, 28 (2d Cir. 2012) (summary order).

When controlling weight is not afforded to treating source opinion, or when opinions from other acceptable medical sources with respect to severity of impairments and how they affect individuals' ability to function are considered, the degree of weight to be given such evidence is determined by applying certain generic factors prescribed by regulation: (1) length of treatment relationship and frequency of examination; (2) nature and extent of treatment relationship; (3) evidence supporting the opinion; (4) how consistent opinion is with record as a whole; (5) specialization in contrast to condition being treated; and (6) other significant factors.[14]

3.    Application

ALJ Gale acknowledged that Dr. Neupane was Mathews's treating rheumatologist. (T. 22).    He did not exceed bounds of his discretion, however, nor did he violate the governing regulation when declining to give controlling weight to Dr. Neupane's opinion that Mathews is limited in her ability to perform various work activities to only 2 to 4 hours a day. ALJ Gale carefully documented the treatment relationship and the degree of Dr. Neupane's

---

[13]    *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[14]    *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

specialization (Factors 1, 2 and 5). (T. 22). He concluded, however, that Dr. Neupane's opined limitations were inconsistent with his own negative clinical findings,[15] Matthews's activities of daily living, and salutary effects of medications (Factors 3, 4 and 6). (T. 22). This constitutes an adequate factor analysis in conformity with the governing regulation.

ALJ Gale also did not exceed bounds of his discretion when electing to give considerable weight to the opinion of her treating orthopedic surgeon, Dr. Mosher. The attempt to disqualify Dr. Mosher's opinion that Matthews is "fit for light work" as an impingement on a matter reserved exclusively for the Commissioner is a red herring. ALJ Gale did not adopt a "light work" residual functional capacity finding. Rather, he cites Dr. Mosher's opinions more for the fact that within four months of surgery, Dr. Mosher released her to work part-time (T. 21), and after five months, Dr. Mosher opined that she did not require any further therapy on her right shoulder and was ready to return to the workforce full-time. Further, Dr. Mosher opined that Mathews's right shoulder impairment would not persist, in any event, for more than one year.

ALJ Gale properly could afford considerable weight to Dr. Mosher's opinions for another reason. Unlike opinions of Dr. Neupane, Dr. Mosher's opinions are consistent with the record as a whole (Factor 4), including the opinions of Dr. Daly and Dr. Smallman as reflected in their treatment notes. Dr. Mosher was a treating specialist with respect to the orthopedic impairments under consideration. (Factors 1, 2 and 5).

---

[15] Dr. Neupane repeatedly observed that Mathews exhibited no motor nor sensory deficits. Her arms and legs exhibited no cyanosis, edema, or clubbing. (T. 620, 622, 624, 626, 694, 726). Upon examination of her upper limbs, Dr. Neupane reported no joint swelling, inflammation, restriction of movement, or deformities. (T. 694). Dr. Neupane's treatment records in 2009 reflect she was feeling "pretty good," walking for exercise, and experiencing pain as zero out of ten. (T. 725).

Dr. Mosher's opinions were expressed four years before ALJ Gale's decision, and obviously were limited in scope to a right shoulder impairment. In absence of any evidence of subsequent right shoulder degeneration, however, this does not render Dr. Mosher's opinions "outdated." Nor does the fact that Dr. Mosher confined his opinions to matters within the scope of his expertise suggest that his opinions are entitled to lesser weight.

In sum, ALJ Gale's credibility choices regarding medical source opinions were reached and explained sufficiently, and are not reversible for failure to apply correct principles of law.

B.    *Weighting of Subjective Testimony*

Mathews reported that, due to her impairments, personal grooming takes longer than it used to, and that she is no longer able to prepare meals "without the use of a microwave." (T. 228-29). She tires easily, and has difficulties performing household chores as a result. (T. 780-81). She has difficulty lifting both of her shoulders and her arms. (T. 782). She believes her skills in math and reading have "deteriorated" due to short-term memory loss. (T. 778-79). She experiences adverse side effects from medications, including dizziness and sedation. (T. 787). Mathews also complains of pain, spasms, difficulty using her arms overhead, a limited ability to lift and walk, fatigue, decreased strength, weight loss, and an upset stomach. (T. 208-215, 227-237, 773-74, 779-782).

ALJ Gale found that Mathews's medically determinable impairments reasonably can be expected to cause symptoms described by Mathews. (T. 24). He decided, nevertheless, that Mathews's statements concerning intensity, persistence and limiting effects of those symptoms "are not entirely credible." (T. 24). He pointed to inconsistencies in Mathews's testimony, effectiveness of medications, and Mathews's daily activities belying a claim that she is unable

to perform sedentary work.  (T. 24-25).  ALJ Gale also noted that several doctors reported in treatment notes that she was, in fact, working.[16]  (*Id.*).

### 1.    Mathews's Challenge

Mathews cites the Commissioner's protocol for appropriate assessments of disability claimants' subjective testimony articulated in 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3) and SSR 96-7p.  Mathews asserts that these requirements were not observed by ALJ Gale, and that ALJ Gale also failed to reject her testimony explicitly and with sufficient specificity to enable a court to determine whether there are legitimate reasons for his disbelief, and whether his credibility assessment is supported by substantial evidence.

### 2.    Governing Legal Principles

Testimony from claimants regarding persistence, intensity and limiting effects of symptoms is not only relevant, but desirable.  On the other hand, it is subjective and may be colored by interest in obtaining a favorable outcome.  An administrative law judge must, therefore, engage in a difficult task of deciding how much weight to give claimants' subjective self-evaluations.

The Commissioner provides explicit guidance.  First, a formally promulgated regulation requires consideration of seven objective factors that naturally support or impugn subjective testimony of disabling pain and other

---

[16]    Mathews worked after the alleged disability onset date, but her work activity did not rise to the level of substantial gainful activity.  (T. 16).

symptoms.[17] Second, an interpretive ruling directs administrative law judges to follow a two-step process to evaluate claimants' allegations of pain:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .

> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

SSR 96–7p, TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, 1996 WL 374186, at *2 (SSA July 2, 1996). The Ruling further provides that "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

---

[17] An administrative law judge must evaluate a claimant's symptoms, including pain, based on medical and other evidence, including the following factors:

(i) claimant's daily activities;
(ii) location, duration frequency, and intensity of claimant's pain or other symptoms;
(iii) precipitating and aggravating factors;
(iv) type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate her pain or other symptoms;
(v) treatment, other than medication, claimant receives or has received for relief of her pain or other symptoms;
(vi) measures claimant uses or has used to relieve pain or other symptoms; and
(vii) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

Governing circuit law generally mirrors the Commissioner's Ruling. Thus, when an ALJ rejects a claimant's testimony of pain and limitations, he or she must provide explicit reasons for rejecting the testimony. *See Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir. 1988); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983).[18]

3.    Application

Citing 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p, and SSR 96-7p, ALJ Gale acknowledged all regulations and rulings that govern consideration of subjective evidence. (T. 19). He expressly referenced the two-step process for considering subjective symptoms. (T. 19-20). These recitations document his awareness of and intent to apply correct legal principles.

ALJ Gale's decision reflects that he then considered objective factors identified in the Regulation to the extent there was evidence thereof. He summarized at length the medical evidence regarding mental and physical issues. (T. 19-25). Such evidence (portions of which are reported in note 22, *infra*) encompassed objective factors pertinent under the Regulation. He applied the two-step process as required by the applicable Ruling,[19] and articulated

---

[18]    When an administrative law judge neglects to employ proper legal standard, a court cannot subject his credibility determination to meaningful review. *See Meadors v. Astrue*, 370 Fed. App'x 179, 184-85 (2d Cir. 2010).

[19]    After summarizing the evidence addressing Mathews's alleged physical and mental limitations, ALJ Gale engaged in the two-step process, finding:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible." The claimant's allegations were not supported by the objective medical findings or the majority of the opinions of record and were inconsistent with her activities.

(T. 24).

specific reasons for finding Mathews's subjective complaints not fully credible, all as required by circuit law.[20] Thus, there is no obvious structural legal error in ALJ Gale's approach to assessing credibility of Mathews's subjective testimony regarding persistence, intensity and limiting effects of her symptoms.

The remaining question is whether substantial evidence supports ALJ Gale's articulated reasons. Performance of basic daily activities essential for sustenance and health does not necessarily demonstrate residual functional capacity for work activities.[21] Similarly, part-time and occasional volunteer work does not necessarily demonstrate ability to work on a regular and continuing basis. Both, however, have relevance to an individual's credibility regarding

---

[20]     ALJ Gale reasoned as follows:

In addition to the activities noted above, in December 2004, she reported doing "a lot of running around." In December 2008, she reported "really work[ing] hard during Christmas time."

* * *

Several medical providers found the claimant's complaints to be questionable.

* * *

The claimant was not consistent with her physical therapy attendance. She did not follow through with recommended testing. She was not interested in medications. Additionally, the claimant engaged in work activities.

* * *

Given the above, the claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible.

(T. 24-25)(internal citations omitted).

[21]     Claimants need not be complete invalids to qualify for benefits, and their subjective credibility should not be impugned simply for enduring pain in order to care for themselves. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998); *see also Stoesser v. Commissioner of Soc. Sec.*, No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *7 (N.D.N.Y. Jan. 19, 2011).

that person's subjective assessment of intensity, persistence and limiting effects of symptoms.

ALJ Gale did not rely only on Mathews's performance of sporadic outside work and daily activities necessary for survival. He factored in that Mathews's allegations are not supported by objective medical findings.[22] Treatment records also reflect that several medical providers found Mathews's complaints questionable, one even referring to Mathews as a "tricky historian."[23] Mathews herself acknowledged that medications were effective in reducing symptoms.[24] Finally, there was evidence of more normal daily activities, *i.e.*, activities beyond

---

[22]     A CT scan of Mathews's brain was unremarkable. (T. 481). A magnetic resonance image of her cervical spine revealed only slight narrowing of the C5-6 and C6-7 disc spaces. (T. 480). An x-ray of her left shoulder was unremarkable. (T. 479). X-rays of her right foot, right hip and lumbosacral spine were unremarkable. (T. 477). An upper gastrointestinal series revealed normal findings. (T. 483). Chest x-rays were unremarkable. (T. 482). X-rays of the left femur were unremarkable. (T. 560). A stress echocardiogram revealed a normal heart rate response to exercise with no evidence of inducible ischemia. (T. 712). In December 2004, Mathews had no palpable tenderness through her low back, buttock, or hip area; full range of motion in her cervical and lumbar spine, negative straight leg raising test. (T. 466). Upon examination in December 2006, she had no cyanosis, no clubbing, no edema, no evidence of synovitis in her upper and lower extremities, an unremarkable spinal exam, no effusion in her knees, and no motor sensory deficits. (T. 626). In January 2007, she had no synovitis or limitation of motion in her upper or lower extremities. (T. 622). As of August 2009, Mathews had 5/5 strength in her upper and lower extremities. (T. 719). In October 2009, she exhibited normal motor strength, normal sensation, 2+ deep tendon reflexes, a normal gait and no skeletal tenderness or joint deformity. (T. 703).

[23]     In May 2005, Mathews's treatment provider noted that she was a "difficult historian" and seemed to have a different "constellation of symptoms" each time she was seen. (T. 473). Another doctor in 2006 characterized her complaints as "diffuse" and described Mathews as being a "tricky historian." (T. 476). Also, it was noted that Mathews's pains were "very very poorly described." (T. 561). Her presentation was noted as "very vague and generalized. (T. 562).

[24]     In November 2005, Mathews reported relief from her right shoulder symptoms with the use of Tylenol. (T. 442). In May 2008, Mathews denied having any active symptoms. (T. 696). On September 23, 2008, and again on February 27, 2009, she described her pain as zero out of 10. (T. 725, 731). She further reported that she had been taking all of her medications without any problems. (*Id.*).

bare necessities of personal care and sustenance, that ALJ Gale considered not preclusive of exertional demands of sedentary work.[25]

All of these factors were relevant to Mathews's subjective credibility, and are reflected in the evidentiary record. While some were more weighty than others, the substantial evidence threshold is low. One authoritative definition is that substantial evidence need only be "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury."[26] Were the question of Mathews's credibility regarding intensity, persistence and limiting effects of her symptoms hypothetically submitted to a jury in a civil trial, the evidence relied on by ALJ Gale when finding Mathews not fully credible would be sufficient to preclude a judgment as a matter of law in Mathews's favor. As such, a reviewing court must conclude that ALJ Gale's credibility assessment of Mathews's subjective testimony is supported by substantial evidence.

C. *Step 4 Finding of Capacity to Perform Past Relevant Work*

Before onset of Mathews's alleged disability, she engaged in substantial gainful employment as a dispatcher. (T. 25, 767-68). At Step 4 of the sequential

---

[25] Mathews engaged in part-time and volunteer work activities in various capacities (*e.g.*, receptionist, computer work, light filing, reminder telephone calls, guard duties, *etc.*). (T. 373, 402, 522, 666, 691, 729, 731, 733). Her activities of daily living included: going out for walks; exercising; taking care of her son; preparing meals daily; cleaning house, albeit with help from her son; doing laundry; using public transportation; shopping; and socializing. (T. 227-232, 404, 691, 693-94). In December 2004, Mathews reported doing "a lot of running around" T. 466), and in December 2008, she reported "really work[ing] hard during Christmastime (sic)." (T. 689).

[26] *See National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 262, 300 (1939)(cited in Harvey L. McCormick, Social Security Claims and Procedures § 672 (4th ed. 1991)).

analysis process, ALJ Gale found that a person with Mathews's residual functional capacity can perform work of a dispatcher as it is actually and generally performed. (T. 25). Under that evaluative rubric, a finding of capacity to perform past relevant work mandates a conclusion of "not disabled." *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

1.  Challenge

Mathews argues that ALJ Gale's Step 4 determination is flawed because: (1) errors in earlier credibility determinations produced an invalid residual functional capacity finding that necessarily renders the Step 4 determination unsupported by substantial evidence; and (2) ALJ Gale failed to inquire as to the mental demands of Mathews's prior work, which further renders his Step 4 finding unsupported by substantial evidence. (Dkt. No. 14, pp. 20-21). The first prong of this argument is moot under earlier analysis. Hence, only the second prong needs examination.

2.  Assessing Ability to Perform Past Relevant Work

"[I]n the fourth stage of the [disability] inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003); *see also Christiana*, 2008 WL 759076, at *3 (claimant has the burden of showing that she cannot perform past relevant work). It follows that claimants are not disabled when they can perform their past relevant work, either as they actually performed it, or as it is generally performed in the national economy. *See* SSR 82–61, TITLES II AND XVI: PAST RELEVANT WORK–THE PARTICULAR JOB OR THE OCCUPATION AS GENERALLY PERFORMED, 1982 WL 31387, at *2 (SSA 1982); *see also Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981).

When making this determination, administrative law judges compare claimants' residual functional capacities with physical and mental demands of their past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). In this respect, "[a]n ALJ may rely on the claimant's statements, which 'are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.' " *Kochanek v. Astrue*, No. 08–CV–310 (GLS/VEB), 2010 WL 1705290, at *11 (N.D.N.Y. Apr. 13, 2010) (quoting SSR 82–62, 1982 WL 31386, at *3). An administrative law judge also may consult with a vocational expert witness who can provide evidence of "physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

### 3. Application

When remanding and reassigning this case, the Appeals Council directed ALJ Gale to give further consideration to whether Mathews's residual functional capacity permits her to perform her past relevant work, and to (a) make specific findings regarding physical and mental requirements of that work and (b) provide a comparison with the present physical and mental functional capacity. (T. 106-107). ALJ Gale stated explicitly that he compared Mathews's residual functional capacity for work-related activity with the physical and mental demands of employment as a dispatcher. (T. 25). This recitation constitutes facial compliance with both governing law and the Appeals Council directive.

The remaining question, therefore, is whether ALJ Gale's decision reflects that he did, indeed, make that comparison. ALJ Gale elicited testimony from Mathews regarding demands of her prior relevant work. Mathews testified that

her work as a dispatcher required answering phones, taking emergency calls, dispatching officers, taking maintenance calls, radioing work orders, paper work, and maintaining logs. (T. 768). Then, ALJ Gale consulted a vocational expert[27] who testified that the DOT Code 239.367-014 characterizes the occupation of dispatcher as semi-skilled, sedentary work with an SVP (Specific Vocational Preparation) of 3.[28] (T. 792). He further opined that an individual with Mathews's limitations can perform the occupation of dispatcher as it is generally performed in the national economy. This constitutes a legally-sufficient assessment of demands of prior relevant work and a comparison of such demands to Mathews's residual functional capacity.

Mathews (who has the burden of establishing that she lacks the functional capacity to perform her past relevant work) does not present any argument or identify facts indicating that she cannot perform her prior work as a dispatcher either as she actually performed it or as it is generally performed. Instead, she argues that ALJ Gale failed to "adequately inquire" as to mental demands, specifically "social interaction," required by Mathews's prior dispatcher work.

The evidentiary hearing transcript does not support this argument. It reflects, instead, that ALJ Gale meticulously listed every iota of evidence regarding mental issues, including those that ALJ Gale considered non-significant (T. 798-800) and those he considered moderate. (T. 800). Included in the moderate category were (a) "ability to sustain an ordinary routine without special supervision," (b) "ability to work in coordination or proximity to others

---

[27]  David A. Festa is a Senior Vocational Rehabilitation Counselor for New York State Education Department. He holds B.A. (Liberal Arts) and M.A. (Vocational Rehabilitation) degrees, and also a Certification of Disability Management Specialists Commission(CDMSC) (T. 296-98).

[28]  *See* Dictionary of Occupational Titles, Code 239.367-014, 1991 WL 672225 (4th ed. 1991).

without being distracted by them," (c) "ability to interact appropriately with the general public," (d) "ability to accept instructions and respond appropriately to criticism from supervisors," and (e) "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (T. 800). The expert vocational witness then opined that an individual with such limitations should have no difficulty performing dispatcher work, and confirmed that opinion three distinct times. (T. 801-02).

In sum, none of Mathews's challenges to the Step 4 finding that she remains capable of performing her prior relevant work is persuasive. There is no basis to conclude that ALJ Gale's Step 4 determination is erroneous for lack of substantial evidence.

## D. *Remaining Point*

ALJ Gale's Step 5 finding is surplusage since he was obliged to find Mathews not disabled when, at Step 4, he found that she remains capable of performing prior relevant work. The above analysis concludes that the Step 4 finding is not erroneous. Consequently, the Commissioner's decision must be affirmed, and no useful purpose will be served by addressing Mathews's challenge to ALJ Gale's Step 5 finding.

## VI. Recommendation

Mathews's request to remand this action should be DENIED. The Commissioner's decision should be AFFIRMED.

## VII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   22   day of ____January____ 2014.

Earl S. Hines
United States Magistrate Judge